## H. RIEMENSCHNEIDER *vs.* C. B. WILSON, Superintendent of Water Works.

### MANDAMUS.   BEFORE JUDD, C.J.

### NOVEMBER, 1882.

The Government having assumed control of the Honolulu Water Works, mandamus will lie against the Superintendent of Water Works for a plain violation of his duty.

The Government may make reasonable rules and regulations in respect to the use of water from its pipes: and may deprive a party, transgressing the rules, of his water privilege.

It appearing that petitioner has violated reasonable regulations as to use of water, on account of which his water supply has been cut off, the Court declines to issue a writ to compel the water privilege to be restored to him.

## DECISION OF JUDD, C.J.

This is a petition for a mandamus to command the respondent to turn on the water from the Government pipes to the petitioner's premises.

The petitioner alleges that he is in possession of a premises on Emma street, Honolulu, being a private residence, the grounds planted with a variety of trees and plants, and that he has had and enjoyed a water privilege therefor from the Government pipes for domestic and irrigating purposes, furnished him at $25 per year, which said privilege has never been modified or limited by the consent of the petitioner. That he has paid to the respondent the full rate for the six months ending on the first day of January, 1883, and claims that he is thereby entitled to the water for this term. The receipt is annexed to the petition. The petition further alleges that on the 18th of October the respondent shut off the water from the premises, and refuses to turn it on again, whereby he is deprived of the use of the water to which he is entitled, and is put to inconvenience and exposed to irreparable damage from the loss of his trees; also, that it is the duty of the respondent, as Superintendent of Water Works, to furnish the water as claimed of which he has deprived the petitioner without right, and that the act complained of was a neglect of respondent's duty as Superintendent of Water Works; also, that petitioner has no specific remedy in the premises, or, if there are other means of relief, the slowness of ordinary legal forms would produce long delay in obtaining relief.

It is submitted in evidence that the Superintendent of Water Works has, with the approval of the Minister of Interior, issued certain regulations as to the water supply of Honolulu. The first one submitted bears date 1st January, 1876, and limits the hours of irrigation to the hours from 6 to 8 A.M., and from 4 to 6 P.M.

By Section 5, a rate of $25 per annum is charged for a private house and lot of not more than half an acre, where water is used for irrigation as well as for domestic purposes.

By Section 12, it is provided that any person found running water for irrigation purposes after the hours above specified, will forfeit the unexpired term of his water privilege; and by Section 13, in case of fire, irrigation and fountain privileges are to be shut off under penalty of losing their privilege.

A notice of 19th April, 1881, limiting the hours as above set forth, was also shown. Probably this republication was deemed necessary, as the rule may have fallen into disuse.

Next is offered a rule dated 23d June, 1882, limiting irrigation after that date to four hours per day—from 6 to 8 A.M., from 4 to 6 in the P.M.—and "permission to irrigate during more convenient hours will be granted on application to the superintendent." Persons found irrigating except during specified hours will have their privileges suspended without notice.

The next notice is dated 13th October, and suspends all irrigating privileges until further notice, owing to scarcity of water. It was while this notice was standing that the respondent shut off petitioner's water privilege on the 18th October, for on the 21st a notice appears limiting irrigation to between 6 and 7 A.M., and again on the 24th, a notice limiting the hours from 6 to 8 A.M., and from 4 to 6 P.M. Later rules in conflict with former ones operate a repeal of former ones.

It is agreed that the notice of October 13th, forbidding all irrigation, has no binding force, as not having received the approval of the Minister of Interior.

There is on the back of the receipt for the water rate these words: "The within receipt for water rates is given with the full understanding that the party holding the receipt will conform to the rules and regulations issued from time to time, by order of the Minister of the Interior. Neglect of such regulations will subject the ratepayer to forfeiture of water privileges."

The petitioner's counsel contends that having paid his water rate, the receipt is a contract which binds the Government to furnish him an adequate supply of water for term of six months, and that the notice on the back of the receipt, it not being

shown that petitioner's attention was called to it and his consent obtained, is no part of it, and therefore the Superintendent of Water Works has no right to curtail petitioner's privilege in the least. Also, that the proviso on the back of the receipt is void for indefiniteness, and that there is no power given by the Legislature to make rules, etc.

The circumstances in brief are these: The petitioner, knowing the regulation limiting the hours of irrigation to from 6 to 8 A.M., and from 4 to 6 P.M., has generally conformed to them, but during many days after 1st July he has not had a servant employed in attending to his garden, and so has irrigated himself after the designated hours. For ten days previous to the 18th October, but little or no water flowed through his tap during the hours from 6 to 8 A.M. and from 4 to 6 P.M., and as his plants were drooping, he irrigated at noon and at such other times in which there was water in the pipes. On one occasion his tap was left open and the water flowed all night. The petitioner says this was unintentional on his part.

The respondent says that during the ten days previous to October 18th the water was low in the lower reservoir, and that he could only fill it from the upper reservoir at such hours as rate-payers from the upper reservoir were not using it, as the velocity of the water discharging from it prevented their taps from running. Moreover, he could not fill the lower reservoir nights because it interfered with the gas machines run by the water from the upper reservoir, and he had the further difficulty in drawing off the water from the upper reservoir, as certain persons having kalo patches and lands between the two reservoirs, which had the privilege of riparian proprietors from the stream which supplies both reservoirs, would become short of water, unless the overflow from the upper reservoir was allowed to pass back into the stream for their benefit.

Water is a public necessity, and especially in our climate.

I am of opinion that the Government, having assumed the enterprise of supplying the town of Honolulu with water, and having secured by various acts of the Legislature the right to

condemn the necessary land and water for the purpose of a system of water works, which prevents private parties from engaging in this business, it has taken upon itself a certain duty towards the inhabitants of the town. This is, to make available all the water that is reasonably required and that can reasonably be secured, and to distribute the same as equitably as possible to all ratepayers. I think it would not be proper for the Government to extend indefinitely the number of distributing taps to new applicants without correspondingly increasing its supply. But there is no proof that it has done so.

But the public, receiving the advantages of this water supply from the Government, owe certain reciprocal duties to it, which are to pay the rates as long as they are reasonable, and to obey such rules and regulations as may be made for the public convenience and protection, provided they are reasonable.

The obligation of the Government to the individual rateholder is not alone made by the contract expressed in the receipt for water rates for six months in advance. If this was so, then a fulfilment of it could not be enforced by mandamus. If this proceeding is merely to compel the fulfilment of a contract, then the writ would not lie.

The remedy for breach of contract is at law. But, as in my opinion, the Government has assumed an obligation in this respect, it can be enforced if the refusal to do so is a plain violation of duty on the part of the official. See Section 5 of the Law of Mandamus, Acts of 1876, Chap. 39.

I have indicated that the Government has a right to make reasonable rules and regulations in respect to the water works and the supply of water to the inhabitants.

The exercise of this authority is necessary for the public benefit, and in order to enable the Government properly to fulfil its obligations to all the community in distributing the water as fairly as may be possible. In times of water famine all must suffer reduction alike, and the Government has then the right to restrict the use of the water by ratepayers, commencing the reduction with the least necessary use of water, *i.e.*, irrigation.

At the same time every reasonable exertion must be put forth to secure a full supply of water.

I regard the limitation of irrigation privileges to four hours per day, between 6 and 8 A.M., and between 4 and 6 P.M., as reasonable and as ordinarily sufficient, and it is an accommodation to the public that they may arrange with the superintendent for irrigation during other hours when these prove inconvenient, either from scarcity of water in some localities or from whatever cause.

Having found that the Government may make reasonable regulations and restrictions upon the use of water from its pipes, how can it compel obedience to them? Not by the imposition of a money penalty, for this would imply the right to enforce this by imprisonment, which would be illegal without trial by a Court, and, in the absence of a statute, giving the Superintendent of Water Works or Minister of Interior the power to inflict fines, the only way these rules can be enforced is by a deprivation of the offending party of his water privilege. If the transgression was in irrigating outside of the prescribed hours, I should say irrigation privileges should alone be suspended, if it was possible to separate them from domestic uses. But ordinarily it is not possible to do this.

The regulation of 13th October, suspending all privileges of irrigation, I do not think was reasonable or justified under the circumstances. There had been no drouth of sufficient long continuance to make this a necessity. If the petitioner had only transgressed this rule and had used only sufficient water to keep his plants alive, his case would be different. He had a right, moreover, to disregard this last edict, because it did not appear to have been approved by the Minister of Interior. But the Attorney-General does not contend that this rule was valid and binding. If the petitioner found that it was impossible for him to get water for irrigation during the prescribed hours, it was his duty to apply to the respondent for a change in his hours.

I do not think that an unintentional, and only an exceptional

case of neglect to close a tap and thus let water run to waste all night, should subject a person to have his privilege summarily cut off.

But as I have suggested, if the petitioner had violated no rule except the invalid one suspending all irrigation, and had used only a small quantity of water to keep his plants from dying, I would not hesitate to grant the prayer of his petition and order a restitution of his water privilege, but he admits that he has for months past disregarded the rule of June 23d and irrigated his garden at hours which suited his convenience, and he contends by his counsel that he is not bound to observe any regulation restricting him in the use of the water. As all these violations are brought into the case against him, I must presume it was for these that his water-pipe connecting with the Government main was closed by respondent.

The Attorney-General, for the respondent, offers to restore the privilege on the petitioner agreeing to conform to the published regulations. This is a reasonable offer in my opinion.

Having found that the petitioner has violated the regulations made by the Government in the interest of the public welfare, and that they are reasonable, I must decline to grant the writ prayed for.

*S. B. Dole,* for petitioner.

*Attorney-General Preston,* for respondent.

Honolulu, November 7th, 1882.